**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Luke Snee, | No. CV-21-01108-PHX-DWL (MTM) |
| Petitioner, | **REPORT & RECOMMENDATION** |
| v. | |
| David Shinn, | |
| Respondent. | |

TO THE HONORABLE DOMINIC W. LANZA, UNITED STATES DISTRICT JUDGE:

Petitioner Jason Luke Snee has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1).

**I. SUMMARY OF CONCLUSION**

A jury in Maricopa County Superior Court convicted Petitioner of crimes involving sexual misconduct with a minor. Petitioner timely filed a habeas petition asserting four grounds for relief. Petitioner is not entitled to relief because the first ground is without merit, the second and third grounds are procedurally defaulted, and the fourth ground is without merit and non-cognizable. Accordingly, the Court recommends the petition be denied and dismissed with prejudice.

**II. BACKGROUND**

    **A. Conviction & Sentencing.**

In 2012, the State charged Petitioner with eleven counts, consisting of: aggravated assault (Counts 1 and 2); indecent exposure (Count 3); public sexual indecency to a minor

1  (Count 4); sexual conduct with a minor (Counts 5, 6, 7, and 11); assault (Count 8);
2  contributing to the delinquency of a child (Count 9); and kidnapping (Count 10). (Doc. 9-
3  1, Ex. A, at 4–7). The victim of each offense was the fourteen-year-old daughter of
4  Petitioner's then-girlfriend. (Doc. 9-2, Ex. EE, at 443, 445, 447, 454–460). At the time of
5  the abuse, Petitioner and his three children, the victim's mother and her three children
6  (including the victim), and other family members resided in a home together in Phoenix.
7  (*Id.* at 448). The victim's mother reported the abuse to the Phoenix Police Department.
8  (Doc. 9-2, Ex. DD, at 332–33).

After the victim confirmed the abuse allegations to Detective Christopher Villa, he set up a "confrontation call" between the victim and Petitioner. (*Id.* at 340–41). Detective Villa monitored and recorded this call. (*Id.* at 328, 341–42, 348–49).

During the call, the victim told Petitioner she had to discuss "sexual things" with a counselor at school and asked him if he thought she should tell the counselor about the sexual activity that had occurred between the two of them, to which he responded, "I don't." (Doc. 9-1, Ex. O, at 104–05).[1] When she insisted that she "had to tell" the counselor, Petitioner responded, "You can always leave names out of it." (*Id.* at 106). She asked Petitioner, "Why did you have sex with me when I was only 14? I just don't understand," to which he eventually responded, "I really loved you, I thought you were the one and one thing led to another." (*Id.* at 105). When she asked again later, Petitioner responded, "Well, to be honest, I don't think I ever thought it would go that far that quick the way that it did, but, I feel, like I keep saying, but things just kind of kept happening." (*Id.* at 106). She asked why he chose her, and he answered, "Like I said earlier, because I really loved you and you said you felt comfortable talking to me about anything and I felt comfortable talk[ing] to you about anything." (*Id.*).

After the confrontation call, Detective Villa brought Petitioner in for questioning. (Doc. 9-2, Ex. DD, at 343–44). The videotaped interrogation began with Detective Villa

---

[1] The record does not contain a transcript of the call. The statements from the call referenced herein are taken from the State's appellate brief. (Doc. 9-1, Ex. O, at 104–06).

- 2 -

advising Petitioner of his *Miranda* rights, which Petitioner acknowledged he understood. (Doc. 9-1, Ex. O, at 107).[2] Detective Villa then asked Petitioner to describe his relationship with the victim. (*Id.*). Petitioner stated she was "a good friend" and that they were "[v]ery friendly, probably more so than we should have been." (*Id.*). Petitioner eventually disclosed he and the victim had engaged in numerous sexual acts while she was a minor, ranging from "hugging and kissing" to intercourse. (*Id.* at 107–15).

At trial, the court admitted into evidence recordings of both the confrontation call and the interrogation by Detective Villa. (Doc. 9-2, Ex. DD, at 348–51; Doc. 9-2, Ex. EE, at 374). The jury found Petitioner guilty on Counts 4, 5, 6, and 9 and not guilty on Counts 8 and 10; it did not reach a verdict on Counts 1, 2, 3, 7, and 11. (Doc. 9-1, Ex. J, at 56–58). The court sentenced Petitioner to consecutive terms of 18 years' imprisonment for Counts 5 and 6 and a term of 6 months' imprisonment for Count 9, and placed him on lifetime probation for Count 4. (Doc. 9-1, Ex. K, at 60; Doc. 9-1, Ex. L, at 62–67).

### B. Direct Appeal.

Petitioner appealed. (Doc. 9-1, Ex. M, at 69–70). His sole claim on appeal was the trial court "should have held a voluntariness hearing prior to the introduction of the interrogation video to the jury," arguing such a hearing was required under A.R.S. § 13-3988(A). (Doc. 9-1, Ex. N, at 72–87). The Arizona Court of Appeals affirmed his convictions. (Doc. 9-1, Ex. P, at 133–137). On August 31, 2018, the Arizona Supreme Court denied review. (Doc. 9-1, Ex. R, at 157).

### C. Post-Conviction Relief.

On October 29, 2018, Petitioner filed a notice of post-conviction relief ("PCR"). (Doc. 9-1, Ex. S, at 159–62). Petitioner filed a *pro se* PCR petition alleging his trial counsel was ineffective, the confrontation call violated his *Miranda* rights, the State withheld certain evidence and refused to correct false testimony, and the trial judge was not disinterested and imposed an unlawful sentence. (Doc. 9-1, Ex. T, at 164–261). In response,

---

[2] The record does not contain a transcript of the interview. As with the confrontation call, the statements from the interview referenced herein are taken from the State's appellate brief. (Doc. 9-1, Ex. O, at 107–15).

- 3 -

the State argued Petitioner's claims of ineffective assistance of counsel were without merit and Ariz. R. Crim. P. 32.2(a)(3) precluded his remaining claims because "he could have, but failed to, raise them on direct appeal." (Doc. 9-1, Ex. U, at 263–72). The PCR court summarily dismissed the petition for "the reasons stated in the State's Response." (Doc. 9-1, Ex. W, at 283).

Petitioner filed a petition for review in the Arizona Court of Appeals alleging the PCR court abused its discretion and violated due process in denying his PCR petition, his trial and appellate counsel were ineffective, and the trial court sentenced him under the wrong state statute. (Doc. 9-2, Ex. X, at 4–27). The Arizona Court of Appeals granted review but denied relief, finding no abuse of discretion by the PCR court. (Doc. 9-2, Ex. Z, at 32–33). Petitioner did not seek review by the Arizona Supreme Court, and on October 20, 2020, the Arizona Court of Appeals issued its mandate. (*Id.* at 31).

**III. PETITION FOR A WRIT OF HABEAS CORPUS**

On June 25, 2021, Petitioner filed a habeas petition in this Court (doc. 1) raising four grounds for relief as summarized by this Court:

> In Ground One, Petitioner asserts he received ineffective of counsel because his counsel refused to interview or call anyone on Petitioner's behalf; refused to file any motions on his behalf; and ignored Rule 8 of the Arizona Rules of Criminal Procedure "for years."
>
> In Ground Two, Petitioner contends his confession was involuntary, and "due-process [was] ignored."
>
> In Ground Three, Petitioner claims "corpus delicti was never met" and the State withheld material vital his defense and presented "known false material."
>
> In Ground Four, Petitioner asserts that the jury's failure to return a verdict on five charges violated his Sixth Amendment rights and constituted fundamental, reversible error.

(Doc. 5 at 2).

Respondent asserted that the petition should be dismissed because Petitioner's claims are either procedurally defaulted without excuse or without merit. (Doc. 9). Petitioner did not file a reply.

- 4 -

## IV. APPLICABLE LAW

### A. Requisites for Federal Review.

#### 1. *Exhaustion of State Remedies.*

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (cleaned up); *see* 28 U.S.C. § 2254(b)(1). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court." *Baldwin*, 541 U.S. at 29 (citations omitted). Fair presentation requires a prisoner to "clearly state the federal basis and federal nature of the claim, along with relevant facts." *Cooper v. Neven*, 641 F.3d 322, 326 (9th Cir. 2011); *see also Casey v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004) ("[U]nless the petitioner clearly alerts the court that he is alleging a specific federal constitutional violation, the petitioner has not fairly presented the claim.").

"To exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). In non-capital cases, claims of Arizona prisoners "are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them." *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *see Crowell v. Knowles*, 483 F. Supp. 2d 925, 933 (D. Ariz. 2007).

#### 2. *Absence of a State Procedural Bar.*

"[A] federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). "A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." *Id.* A procedural bar is implied where "the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion

requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *see Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) ("If [petitioner] has any unexhausted claims, he has procedurally defaulted them, because he is now time-barred under Arizona law from going back to state court."). To obtain review of a procedurally defaulted claim, the petitioner must show "either cause for the default and resulting prejudice, or that failure to review the claims would result in a fundamental miscarriage of justice." *Moormann v. Schriro*, 426 F.3d 1044, 1058 (9th Cir. 2005). "'Cause' . . . must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 753. The fundamental miscarriage of justice "exception is limited to those who are actually innocent." *Poland v. Stewart*, 117 F.3d 1094, 1106 (9th Cir. 1997).

Ariz. R. Crim. P. 32.2(a)(3) precludes relief on any claim "waived at trial or on appeal, or in any previous post-conviction proceeding, except when the claim raises a violation of a constitutional right that can only be waived knowingly, voluntarily, and personally by the defendant." *Id.*; *see Stewart v. Smith*, 202 Ariz. 446, 449–50 (2002) (holding a defendant waives a claim merely by failing to raise it at the appropriate time unless the claim implicates a right "of sufficient constitutional magnitude to require personal waiver by the defendant," *e.g.*, the right to a jury or counsel).[3] "Arizona's waiver rules are independent and adequate bases for denying relief." *Hurles v. Ryan*, 752 F.3d 768, 780 (9th Cir. 2014); *see also Beaty*, 303 F.3d at 987.

//

---

[3] Effective January 1, 2020, the Arizona Supreme Court abrogated Rule 32 and divided its substance among new Rule 32 (applying to defendants convicted at trial) and Rule 33 (applying to pleading defendants). Ariz. Sup. Ct. Order No. R–19–0012, *at* https://www.azcourts.gov/rules/Recent-Amendments/Rules-of-Criminal-Procedure. The new rules apply to PCR proceedings initiated or pending on or after January 1, 2020 unless "applying the rule or amendment would be infeasible or work an injustice." *Id.*; *see State v. Mendoza*, 249 Ariz. 180, 182 n.1 (App. 2020); *McCray v. Shinn*, No. CV-17-01658-PHX-DJH, 2020 WL 919180, at *4 n.4 (D. Ariz. Feb. 26, 2020). New Rule 32.2(a)(3) is substantively identical to former Rule 32.2(a)(3) except that it expressly incorporates the exception to waiver articulated in *Smith*, 202 Ariz. at 449–50.

### B. Standard of Federal Review.

To obtain relief, the petitioner must show the state courts' adjudication of a claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "This [unreasonableness] 'standard is difficult to meet.'" *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021) (citation omitted). "'[O]rdinary error[s]'" or even "circumstances where the petitioner offers 'a strong case for relief'" do not suffice. *Id.* (citation omitted). Rather, a petitioner must demonstrate "a decision was so lacking in justification beyond any possibility for fairminded disagreement." *Id.* (cleaned up).

## V. ANALYSIS

### A. Ground One.

In Ground One, Petitioner claims his trial counsel was ineffective because counsel (1) "refused to interview or call anyone [on his] behalf" (2) "refused to argue or file any motions [on his] behalf" and (3) "ignored" Ariz. R. Crim. P. 8[4] "for years." (Doc. 1 at 5).

These claims are exhausted because Petitioner fairly presented them as violations of federal law to the Arizona Court of Appeals in his PCR petition for review (doc. 9-2, Ex. X, at 6, 8–18). *See Swoopes*, 196 F.3d at 1010. The Court consider their merits under 28 U.S.C. § 2254(d) by reviewing the reasonableness of "the last reasoned state-court decision" adjudicating them. *Murray v. Schriro*, 745 F.3d 984, 996 (9th Cir. 2014). Here, the last reasoned decision was by the PCR court, which denied the claims "[f]or the reasons stated in the State's Response [to Petitioner's PCR petition]." (Doc. 9-1, Ex. W, at 283; *see* Doc. 9-1, Ex. U, at 268–71).[5]

---

[4] Ariz. R. Crim. P. 8.3 provides a right to a speedy trial in criminal cases.
[5] The Arizona Court of Appeals did not articulate its reasons for finding the PCR court had not abused its discretion in denying these claims. (*See* Doc. 9-2, Ex. Z, at 33). As such, this Court presumes the Arizona Court of Appeals "agreed with and adopted the reasons given by the [PCR] court." *Curiel v. Miller*, 830 F.3d 864, 870 (9th Cir. 2016).

- 7 -

To succeed on a claim of ineffective assistance of counsel, a defendant must show (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "that the deficient performance prejudiced the defense," *i.e.*, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–90, 694 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citation omitted). "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). On habeas review, the petitioner carries the burden of showing "the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

As an initial matter, Ground One is subject to dismissal due to Petitioner's failure to allege any specific facts as to how counsel's allegedly deficient performance prejudiced him. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."). Nevertheless, the Court will address Ground One on its merits, incorporating the more specific claims and facts Petitioner alleged in his PCR petition for review.

In his PCR petition for review, Petitioner alleged his trial counsel "conducted no pretrial investigation or interviews with any witnesses for the State or [the defense]." (Doc. 9-2, Ex. X, at 10). He alleged he told counsel that "several individuals could/would have testif[ied] that the victim was lying at the behest of her mother . . . who was conspiring with his ex-wife . . . to strip him of custody of their three children." (*Id.* at 11). Petitioner alleged that "had [counsel] interviewed and called [these] witnesses," including one who died before trial, "they could have shown bias and perjury on part of the victim . . . and her mother . . . and [his] factual innocence." (*Id.* at 10). Further, Petitioner alleged counsel was ineffective for failing to challenge the admissibility of the confrontation call as "an

unmirandized investigative interrogation." (*Id.* at 15). Lastly, Petitioner alleged that counsel "fail[ed] to comply with [his] demand for a speedy trial" by seeking "numerous pretrial continuances" without his consent. (*Id.* at 11–12).

In the State's response to Petitioner's PCR petition, which the PCR court adopted in denying Petitioner's claims, the State argued that Petitioner failed to overcome the presumption that his counsel's decisions were tactical as opposed to deficient and that he failed to show prejudice because "nothing in the record reflect[ed] that his outcome would have been different for any of his claims." (Doc. 9-1, Ex. U, at 271).

This Court finds that the PCR court reasonably applied *Strickland* when it denied Petitioner's claims. Given the great weight of the State's evidence at trial—notably, Petitioner's videotaped admissions to Detective Villa, which included his graphic descriptions of his sexual contact with the victim—there is no "reasonable probability" Petitioner would have obtained a more favorable outcome at trial had counsel taken Petitioner's desired actions.[6]

First, there is no "reasonable probability" the outcome would have been more favorable had counsel presented evidence or testimony challenging the credibility of the victim and her mother because such evidence or testimony would not have diminished the probative power of Petitioner's own admissions and their likely effect on the jury's decision to convict him. Given this overwhelming evidence of guilt, which was independent of the testimony of the victim and her mother, there is no "reasonable probability" the result of trial would have been different had the credibility of the victim and her mother been called into question. *See Strickland*, 466 U.S. at 695 (holding the prejudice determination requires a court to "consider the totality of the evidence before the judge or jury" and the extent to which the verdict was "supported by the record").

---

[6] Because Petitioner fails to show prejudice from counsel's alleged errors, the Court need not determine whether counsel's performance was actually deficient. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

     Similarly, there is no "reasonable probability" the outcome would have been more favorable had counsel successfully moved for the exclusion of the confrontation call. During the confrontation call, Petitioner admitted he had sex with the victim while she was fourteen, which he also admitted during his interrogation by Detective Villa. *See* Section II.A, *supra*. Thus, a motion to exclude the confrontation call, even if successful, would likely not have resulted in a more favorable outcome because other evidence before the jury contained this same and other admissions. *See Styers v. Schriro*, 547 F.3d 1026, 1030 n.5 (9th Cir. 2008) ("[A] defendant claiming ineffective assistance of counsel for failure to file a particular motion must not only demonstrate a likelihood of prevailing on the motion, but also a reasonable probability that the granting of the motion would have resulted in a more favorable outcome in the entire case.").

     Lastly, there is no "reasonable probability" the outcome of trial would have been more favorable had the trial taken place sooner rather than later. As an initial matter, the record is sparse with regards to the pre-trial continuances that were filed; only two are in the record before the Court, though at least twenty were filed. (*See* Doc. 9-1, Ex. G, at 40–42 (Fifth Request for a Continuance, 4/15/2015); Doc. 9-1, Ex. H, at 45–47 (Twentieth Request for a Continuance, 6/21/2016); *see also* Doc. 9-2, Ex. JJ, at 719–23 (trial court docket)). The record also contains an order dated July 21, 2014 in which the trial court found Petitioner "waived the applicable time limits" for the one-month period of July 21, 2014 to August 21, 2014 (doc. 9-1, Ex. G, at 43); however, it does not indicate whether any additional waivers were obtained for the remainder of the pre-trial period.[7] In any event, the only conceivable prejudice Petitioner alleges from trial delay is that a witness he intended to present to challenge the credibility of the victim and her mother died before trial. (Doc. 9-2, Ex. X, at 10). However, as explained above, there is no "reasonable probability" that such testimony would have resulted in a different outcome. Petitioner, therefore, fails to show he was prejudiced by a later trial date, even if, *arguendo*, his counsel

---

    [7]     At sentencing, Petitioner was credited 1,616 days (roughly four and a half years) for time spent in pre-trial custody. (Doc. 9-1, Ex. K, at 60).

- 10 -

unreasonably delayed trial. *See Barker v. Wingo*, 407 U.S. 514, 530–32 (1972) (identifying "prejudice" from the delay as a factor in determining whether a speedy trial violation occurred).

Petitioner fails to show the PCR court "applied *Strickland* to the facts of his case in an objectively unreasonable manner," *Woodford*, 537 U.S. at 25, and therefore fails to show he is entitled to habeas relief on Ground One. Accordingly, the Court recommends that Ground One be dismissed for lack of merit.

### B. Ground Two.

Petitioner claims his incriminating statements during the confrontation call and the subsequent interrogation by Detective Villa were involuntary and in violation of his *Miranda* rights. (Doc. 1 at 7). Petitioner alleges that in his "confession the ONLY person [he] ever mentions or speaks of is [the victim's mother]" and the "only one" who mentioned the victim was the detective. (*Id.*). Petitioner concludes due process was "ignored." (*Id.*).

Petitioner is not entitled to relief on Ground Two. Ground Two's claims are unexhausted and are implicitly procedurally defaulted because Petitioner is procedurally barred from asserting them in state court now.

Petitioner did not fairly present Ground Two's claims to the Arizona Court of Appeals on direct review. There, Petitioner merely argued that the trial court failed to hold a hearing allegedly required under state law. (*See* Doc. 9-1, Ex. N, at 83 ("The issue presented to this Court is whether A.R.S. § 13-3988(A) requires the trial court to conduct a voluntariness hearing, outside the presence of the jury, whenever the State offers a defendant's confession as evidence, even if one is not requested by the defense.")). Critically, Petitioner did not allege a violation of any specific federal law or right in support of his argument as required for proper exhaustion (*see id.* at 83–86). *See Casey*, 386 F.3d at 913 ("[U]nless the petitioner clearly alerts the court that he is alleging a specific federal constitutional violation, the petitioner has not fairly presented the claim."). Petitioner's cursory assertion at the end of his argument that the trial court had both a "statutory *and constitutional* responsibility" to determine the voluntariness of his statements at such a

hearing (*id.* at 86 (emphasis added)) did not constitute fair presentation of the claims asserted here. *See Castillo v. McFadden*, 399 F.3d 993, 1003 (2005) ("Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory."). A factual overlap between the claims asserted here and Petitioner's claim on appeal is also insufficient. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." (citations omitted)); *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

Petitioner also failed to fairly present Ground Two's claims to the Arizona Court of Appeals on collateral review. In his PCR petition for review, Petitioner alleged his trial counsel was ineffective for, among other things, failing to challenge the admissibility of the confrontation call as "an unmirandized investigative interrogation." (Doc. 9-2, Ex. X, at 15). However, the claim was not fairly presented because it was presented as an issue ineffectively handled by counsel rather than as a free-standing ground for relief. *See Rose v. Palmateer*, 395 F.3d 1108, 1112 (9th Cir. 2005) ("[A]lthough [petitioner's] Fifth Amendment claim is related to his claim of ineffective assistance, he did not fairly present the Fifth Amendment claim to the state courts when he merely discussed it as one of several issues which were handled ineffectively by his trial and appellate counsel. While admittedly related, they are distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts."). Thus, Ground Two is unexhausted because Petitioner did not fairly present its claims to the Arizona Court of Appeals. *See Swoopes*, 196 F.3d at 1010; *Roettgen*, 33 F.3d at 38.

Petitioner is barred from returning to state court to properly exhaust the claims in Ground Two. *See* Ariz. R. Crim. P. 32.2(a)(3). Ground Two, therefore, is implicitly procedurally defaulted and consequently barred from this Court's review. *See Coleman*, 501 U.S. at 735 n.1; *Hurles*, 752 F.3d at 780 ("Arizona's waiver rules are independent and

adequate bases for denying relief."); *Beaty*, 303 F.3d at 987 ("If [petitioner] has any unexhausted claims, he has procedurally defaulted them, because he is now time-barred under Arizona law from going back to state court."). Petitioner does not attempt to excuse the procedural default or show that he is actually innocent. Accordingly, the Court recommends that Ground Two be dismissed with prejudice as unexhausted and procedurally defaulted without excuse.

### C. Ground Three.

In Ground Three, Petitioner claims "corpus delicti was never met" and that the "State withheld material vital to [his] defense [and] presented known false material." (Doc. 1 at 8). Petitioner alleges the State "showed no loss, injury, [or] damage" and relied only on testimony from the detective with "no corroboration, no witness, no proof, [and] no evidence." (*Id.*). He further alleges the victim's identification of him "by scars on arms" is "not proof of sexual anything" because the "entire family lived with [him]" and that he "repeatedly pointed out to counsel his intimate piercing [and] was ignored." (*Id.*).

Petitioner is not entitled to relief on Ground Three. Petitioner did not present these claims to the Arizona Court of Appeals on direct review (doc. 9-1, Ex. N, at 72–87) or collateral review (doc. 9-2, Ex. X, at 4–27). Therefore, they are unexhausted. *See Swoopes*, 196 F.3d at 1010; *Roettgen*, 33 F.3d at 38. Petitioner is also barred from returning to state court to properly exhaust them now. *See* Ariz. R. Crim. P. 32.2(a)(3). Ground Three, therefore, is implicitly procedurally defaulted and consequently barred from this Court's review. *See Coleman*, 501 U.S. at 735 n.1; *Hurles*, 752 F.3d at 780; *Beaty*, 303 F.3d at 987.

Petitioner does not show cause to excuse the procedural default or that he is actually innocent. Petitioner merely alleges he did not raise these claims on direct appeal because his appellate counsel "only brought up voluntariness of confession." (Doc. 1 at 9). To establish cause to excuse a procedural default on the basis of counsel's failure to raise a claim, a petitioner must show that the failure "amounted to a deprivation of the constitutional right to counsel," which requires showing that the omitted claims were "plainly stronger than those actually presented to the appellate court," *Davila v. Davis*, 137

S. Ct. 2058, 2065, 2067 (2017), and overcoming the presumption that counsel's choice to forego these claims fell "within the wide range of reasonable professional assistance," *Strickland*, at 689. Counsel is not ineffective merely for failing to raise every nonfrivolous issue possible. *See Davila*, 137 S. Ct. at 2067 ("Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed."); *Murray v. Carrier*, 477 U.S. 478, 486 (1986) ("[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default."). Because Petitioner has not shown (or even alleged) that his appellate counsel's failure to raise these claims constituted constitutionally deficient performance, he fails to show cause to excuse their procedural default on that basis.

Accordingly, the Court recommends that Ground Three be dismissed with prejudice as unexhausted and procedurally defaulted without excuse.

### D.     Ground Four.

Petitioner claims the absence of a verdict on Counts 1, 2, 3, 7, and 11 violated his rights under the Sixth Amendment. (Doc. 1 at 10).[8]

As an initial matter, the Court does not need to determine whether Petitioner exhausted Ground Four because it is plainly meritless. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Medley v. Ryan*, No. CV–12–762–PHX–GMS (BSB), 2012 WL 6814246, at *5 (D. Ariz. Dec. 10, 2012) ("Respondents argue that this claim is procedurally barred. The Court will nonetheless address the claim because it is plainly meritless."), *adopted by* 2013 WL 105269 (D. Ariz. Jan. 9, 2013).

---

[8]     Petitioner also claims the jury's failure to return a verdict violated provisions of the Arizona constitution. (Doc. 1 at 10.) However, this component of Ground Four is non-cognizable because "federal habeas corpus relief does not lie for errors of state law." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *see Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Ground Four is without merit. Petitioner does not cite, nor is the Court aware of, any opinion from the United States Supreme Court holding that a jury's failure to reach a verdict on a charge—in other words, not convicting the defendant—violates a defendant's Sixth Amendment rights. The Court, therefore, finds no clearly established federal law that would entitle Petitioner to relief on Ground Four. *See* 28 U.S.C. § 2254(d)(1).

Further, the absence of a conviction on these counts means Petitioner is not "in custody pursuant" to them, which precludes the Court from granting relief. *See* 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person *in custody pursuant to the judgment of a State court* only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." (emphasis added)); *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989) (requiring "the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition his filed"). Accordingly, the Court recommends that Ground Four be dismissed.

## VI. CONCLUSION

The record is sufficiently developed; therefore, an evidentiary hearing is not necessary. *See Rhoades v. Henry*, 638 F.3d 1027, 1041 (9th Cir. 2011). For the reasons discussed in this Report, Petitioner is not entitled to habeas relief. Accordingly, the Court will recommend that Petitioner's petition be denied and dismissed with prejudice.

## VII. CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing Section 2254 Cases, 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further," *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner has not made the requisite showing here, the Court will recommend that a certificate of appealability be denied.

**IT IS THEREFORE RECOMMENDED** that the Petition for a Writ of Habeas Corpus (doc. 1) be **denied** and **dismissed with prejudice**.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability be **denied**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 8th day of March, 2022.

_____
Honorable Michael T. Morrissey
United States Magistrate Judge